UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-cv-00011-FL

| | |
|---|---|
| GARLAND APPAREL GROUP, LLC, )<br>)<br>Plaintiff, )<br>)<br>*v.* )<br>)<br>FREDERICK ALEXANDER, )<br>)<br>Defendant. ) | DEFENDANT'S MEMORANDUM<br>SUPPORTING MOTION TO<br>DISMISS |

Pursuant to Local Civil Rules 7.1(e) and 7.2, defendant Frederick Alexander ("Alexander") through counsel hereby respectfully submits this memorandum of law in support of defendant Alexander's motion to dismiss the complaint filed in this action by plaintiff Garland Apparel Group, LLC ("Plaintiff").

## NATURE OF THE CASE

Plaintiff asserts purported claims against its former employee, defendant Alexander, for breach of contract, tortious interference with contract, and punitive damages. For reasons described herein, Plaintiff's breach of contract claim must be dismissed because Plaintiff failed to plausibly allege a valid employment agreement, failed to plausibly alleged a breach of any agreement, and failed to comply with jurisdictional requirements. Plaintiff's tortious interference with contract claim must also be dismissed because it violates the economic loss rule and it fails to state a plausible claim. Finally, Plaintiff's "claim" for punitive damages must be dismissed because Plaintiff fails to assert any non-conclusory facts to make

a plausible claim for the same. Accordingly, defendant Alexander seeks dismissal of Plaintiff's complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

Plaintiff operates a cut-and-sew apparel manufacturing facility located in Garland, North Carolina. (Compl. ¶ 8). Plaintiff hired defendant Alexander to serve as its president and entered into an employment agreement with Alexander effective July 2021.[1] (*Id.* ¶¶ 10-11) Plaintiff alleges that the employment agreement contained a clause where Alexander would not "solicit" Plaintiff's employees for a period of two years after his separation from employment. (*Id.* ¶ 13, Ex. A). Additionally, in the purported employment agreement, Plaintiff promised Alexander that upon his termination from employment without cause, Plaintiff will provide him with two-months prior notice along with salary payment for six additional months as severance for a total severance payment equivalent to eight-months' salary. (Compl. Ex. A, pp. 2-3).

On December 15, 2021, Plaintiff terminated Alexander's employment without cause. (*Id.* ¶ 15). Plaintiff alleges that two days later, Alexander entered into a severance agreement in connection with the termination from employment. (*Id.* ¶ 16, Ex. B). Plaintiff agreed to pay Alexander the equivalent of seven-months base pay, continue health insurance to June20, 2022, and pay his bonus in two installments.

---

[1] In its complaint, Plaintiff attached a purported employment agreement, which was unsigned by both parties. (Compl. Ex. A). Alexander denies that Exhibit A contained in the complaint is a valid or enforceable agreement, particularly as it pertains to the alleged restrictive covenants, which must be signed by Alexander under the applicable Statute of Frauds. However, for purposes of analysis, Alexander will reference the "employment agreement," as alleged by Plaintiff, but in so doing, does not in any way concede that the same is a valid or otherwise enforceable agreement.

(*Id.* ¶ 18). However, upon termination, Plaintiff already had a pre-existing contractual duty to pay Alexander the equivalent of eight-months base pay along with his earned wages, including the bonus representing 10% of his salary within two installments. (Compl. Ex. A, pp. 1-2).

Plaintiff alleges that in the severance agreement Alexander agreed to "honor" the terms of the "post-employment restrictive covenants" contained in the alleged alleged employment agreement. (*Id.* ¶ 19, Ex. B p. 7). Although the alleged employment agreement contains no definition of "restrictive covenants" or otherwise makes explicit reference the same, Plaintiff alleges that the term "post-employment restrictive covenants" included the putative "non-solicitation covenant," set forth therein. (*Id.* ¶ 19, Ex. B p. 7; *c.f.* Ex. A).

Plaintiff alleges that once the seven-months base salary continuation expired, Alexander violated the purported "promises that he previously made" by hiring "two managerial employees" of Plaintiff for the business venture Alexander had allegedly joined after separating from his employment. (*Id.* ¶¶ 21-22). Plaintiff alleges that the unnamed "two managers" resigned on or about August 15, 2022 "in order to work for Alexander's current employer and were hired by Alexander." (*Id.* ¶ 23). Plaintiff alleges that this purported hiring "caused damage" to Plaintiff's "based on the disruption of the business caused by the loss of two key managers." (*Id.* ¶ 26).

3

# ARGUMENT

## I. Standard for review.

A motion to dismiss brought under Rule 12(b)(6) tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contained "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of plausibility. *Id.* "Factual allegations must be enough to raise the right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Although a court considering Rule 12(b)(6) motion must accept as true all well-pleaded factual allegations, the court need not accept legal conclusions stated in the complaint. *Iqbal,* 556 U.S. at 678. To survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.

In *Iqbal,* the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 554-55).

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal,* 556 U.S. at 679. Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief," and therefore should be dismissed. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (citations omitted). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained behavior, the claim for relief is not plausible. *Id.* at 680. If the complaint's well-pleaded factual allegations fail to nudge the plaintiff's claims "across the line from conceivable to plausible," then the "complaint must be dismissed." *Twombly,* 550 U.S. at 570. The Fourth Circuit has not hesitated to dismiss deficient complaints at the Rule 12(b)(6) stage. *See, e.g. Francis v. Giacomelli,* 588 F.3d 186 (2009)(explaining *Iqbal* and *Twombly* in light of "the recognized problems created by 'strike suits' [internal citations omitted] and the high costs of frivolous litigation."); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.,* 780 F.3d 582, 585 (4th Cir. 2015)(affirming dismissal because it "stopped short of the line between possibility and plausibility of entitlement to relief."); *Coleman v. Maryland Court of Appeals,* 626 F.3d 187 (4th Cir.

5

2010)(affirming dismissal where allegations failed "to raise a right to relief above the speculative level.").

## II. Plaintiff's breach of contract claim should be dismissed for failure to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6).

In its first purported claim for relief, Plaintiff alleged that Alexander was subject to "valid and enforceable covenants" contained in the employment agreement where he would not "solicit, hire, or induce the resignation of Plaintiff's employees for a period of two years following his separation from employment. (Compl. ¶¶ 27-32) Plaintiff alleged that Alexander received "adequate and sufficient consideration for entering into the covenants set for in his [e]mployment [a]greement, including . . . continued employment, seven months' severance pay, a bonus payment, and receiving health insurance coverage through June 30, 2022." (*Id.* ¶29) Although the employment agreement references "non-solicitation" as the provision identification, the provision related to Plaintiff's lawsuit is more accurately identified as a "no-poach" provision for post-separation because Plaintiff's provision only relates to Plaintiff's "at will" employees who are not subjected to any non-compete restriction and does not seek to protect Plaintiff's clients or customers, but only restrain the rights of employees.

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Supplee v. Miller-Motte Bus. Coll., Inc.,* 239 N.C. App. 208, 216, 768 S.E.2d 582, 590 (2015). Plaintiff's purported breach of contract claim fails because the referenced contract is invalid and to the

6

extent it is valid, which is denied, Plaintiff failed to bring claim before a court with proper jurisdiction under the terms and otherwise failed to allege a plausible claim.

> A. Plaintiff failed to allege sufficient facts showing a plausibly valid written contract signed by Alexander, as required by law for enforcement of the no-poach provision.

N.C. Gen. Stat. § 75-4 states that no contract or agreement limiting the rights of any person to do business anywhere in North Carolina shall be enforceable unless such agreement is in writing duly signed by the party who agrees not to enter into such business within such territory. N.C. Gen. Stat. § 75-4; *Power Home Solar, LLC v. Sigora Solar, LLC,* 2021 NCBC LEXIS 55, *23 (2021)(the requirements for enforceability of non-solicitation clauses and non-compete clauses are the same). Because the statute of frauds is a public policy consumer protection statute, waiver does not obviate the need for a written agreement. *Dealers Supply Co. v. Cheil Indus.,* 348 F.Supp. 579 (MDNC 2004).

In alleging the employment agreement, Plaintiff attached a purported copy of the employment agreement and incorporated it by reference into the complaint. (Compl. ¶ 13, Ex. A). However, a review of the purported employment agreement reveals that the document was signed neither by Plaintiff, nor by Alexander. (*Id.* Ex. A p. 5) The failure to allege a written agreement signed by Alexander renders any purported restrictive covenant contained therein as invalid and unenforceable. The fact that the severance agreement is signed does not rehabilitate the defective provision in the alleged employment agreement. For this reason alone, Plaintiff's breach of contract claim should be dismissed.

7

Case 7:23-cv-00011-FL   Document 9   Filed 02/27/23   Page 7 of 20

Moreover, Plaintiff seeks essentially to enforce a *de facto* "no-poach" agreement, which is contrary to public policy and violates the *Sherman Anti-trust Act of 1890*, which prohibits *inter alia* contracts in restraint of interstate trade. 15 U.S.C. §§ 1-38, as amended. A "no-poaching" clause is a promise by a party or both parties to an agreement, either in writing or oral, not to compete for the other party's or either parties' employees, either during the term of the agreement or for a duration after the employees' termination. They may appear in agreements as "no-recruiting," "no-solicitation," "no-hire," or a similarly-named clause that affects an employee's ability to move from one company to another.

In its complaint, Plaintiff claims that Alexander interfered with its employment relationship with two of its "at will" employees. Plaintiff alleges that it had "contractual relationships" with the two "at will" employees. However, Plaintiff does *not* allege that the "contractual relationships" were in writing or that they contained any restrictive covenants for the two employees. Accordingly, the two employees were free to leave their employment with Plaintiff at any time and for any reason. Plaintiff could have negotiated with the two employees for an employment term consisting of a particular period of months or years, but chose otherwise. Likewise, Plaintiff could have negotiated with the two employees that each sign a non-compete agreement, but chose otherwise. Now, Plaintiff seeks to punish Alexander because two employees, who were free to leave their employment for any reason, did so and went to work for Plaintiff. Yet, the employees who Plaintiff wishes to control had no say and received no consideration for their substantially reduced

8

employment options. Perhaps Plaintiff could have arranged for a non-compete provision for Alexander to refrain from encroaching on the economic and free competition rights of the "two employees." However, Plaintiff chose not to implement a non-compete on Alexander.

By seeking to impose a non-compete agreement on two employees without their being in privity of any agreement, or receiving any consideration for the same, Plaintiff seeks to implement a *de factor* "no-poach" agreement by seeking to contract and to effectively limit the options of its employees with competitors for competitive reasons. This *de facto* "no-poach" agreement violates the *Sherman Antitrust* Act *of 1890*, which prohibits *inter alia* contracts in restraint of interstate trade. 15 U.S.C. §§ 1-38, as amended.

### B. Plaintiff failed to allege sufficient facts showing a plausible breach of any terms contained in the purported contract.

Although the severance agreement is rather ambiguous as for what Plaintiff references therein as "post-employment restrictions" in the employment agreement, Plaintiff is presumably referring to the "non-solicitation" provision. (Compl. Ex. A, pp. 3-4). This provision states that the employee shall not "solicit, hire, or otherwise engage any person employed by the Company to perform services for the Employee or any other person or entity." (*Id.*) Plaintiff alleges "on information and belief," that Alexander "agreed to hire two managerial employees" around mid-August 2022 and that these two managers resigned on or about August 15, 2022 to work for Alexander's current employer. (*Id.* ¶¶ 22-23) However, the complaint fails to provide

9

any indication whether the two employees were in fact employed by Plaintiff at the time that Alexander allegedly hired them on behalf of his company. Significantly, a close reading of the putative "non-solicitation" provision reveals that it only precludes Alexander soliciting, hiring, or engaging *any person employed by the Company*. (Compl. Ex. A p. 4). That is, under the terms of the purported non-solicitation provision, Alexander is *not precluded* from soliciting, hiring, or engaging any person who was formerly employed by the Company.

Because the complaint is silent as for whether the "two employees" were then currently employed when the hiring happened or whether the hiring happened after they resigned "on or about August 15, 2022, the complaint fails to assert a plausible breach of contract claim; it only makes allegations perhaps consistent with a potential breach of contract, but not a plausible breach. *See McCleary-Evans,* 780 F.3d at 585 (affirming dismissal that "stopped short of the line between possibility and plausibility of entitlement to relief."); *Coleman,* 626 F.3d 187 (affirming dismissal where allegations failed "to raise a right to relief above the speculative level."). As such, Plaintiff's putative breach of contract claim should be dismissed for failure to state a plausible claim.

C. This Court has no jurisdiction to determine any breach of contract issue because to the extent the employment agreement is valid, which is denied, Plaintiff agreed that the courts of the State of Illinois shall have the exclusive jurisdiction to determine the same.

To the extent that the purported employment agreement is valid and enforceable, which is denied, Plaintiff agreed to file any action to enforce the

contractual right or obligation within the "exclusive jurisdiction of the courts of the State of Illinois." (Compl. Ex. A, p. 5). However, Plaintiff filed this action within the jurisdiction of the courts of the State of North Carolina. Accordingly, this Court has no jurisdiction to determine the breach of contract issue asserted by Plaintiff. As such, Plaintiff's breach of contract claim should be dismissed for lack of jurisdiction.

### III. Plaintiff's tortious interference with contract claim should be dismissed for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

Plaintiff asserts a purported claim for tortious interference with contract because two of its former "at will" employees allegedly decided to resign their employment and work for Alexander's employer. (Compl. ¶¶ 33-38). The elements of a claim for tortious interference with contract are: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC,* 368 N.C. 693, 700, 784 S.E.2d 457, 462 (2016). "Where circumstances surrounding a tortious interference claim involve a business competitor, the party asserting the claim must show that the competitor acted with malice of a bad motive." *Combs & Assocs. v. Kennedy,* 147 N.C. App. 362, 372, 555 S.E.2d 634, 641 (2001). North Carolina does not recognize an independent breach of duty of loyalty by an at-will employee. *Id.*

11

Case 7:23-cv-00011-FL   Document 9   Filed 02/27/23   Page 11 of 20

A. Plaintiff's tort claim is barred by the "economic loss rule" because Plaintiff seeks to conflate its breach of contract claim and the exclusive damages related thereto with the tortious interference with contract claim.

Plaintiff's tort claim is merely a restatement of its invalid and defective contract claim disguised as a distinct cause of action and is prohibited by the "economic loss" rule. The economic loss rule generally bars recovery in tort for damages arising out of a breach of contract claim. *Rountree v. Chowan Cty.,* 252 N.C. App. 155, 159, 796 S.E.2d 827, 830 (2017). A tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, where the injury resulting from the breach is damage to the subject matter of the contract. *Id.*

The "economic loss rule" bars Plaintiff's tort claim. In its complaint, Plaintiff seeks to conflate a dubious breach of contract claim with a tort claim against Alexander. Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor under the economic loss doctrine. *North Carolina Ports Authority v. Lloyd A. Fry Roofing Co.,* 294 N.C. 73, 81, 240 S.E.2d 345 (1978)(*rev'd* on other grounds). In North Carolina, tort claims which arise out of breach of contract claims are allowed only in "carefully circumscribed" circumstances. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 347 (4th Cir. 1998). Tortious conduct must be "identifiable" and "distinct from the primary breach of contract claim," and must be accompanied by sufficient aggravating circumstances. *Broussard,* 155 F.3d at 347; *See PCS Phosphate Co. v. Norfolk S.*

12

*Corp.,* 559 F.3d 212, 224 (4th Cir. 2009); *See also Strum v. Exxon Co., U.S.A.,* 15 F.3d 327, 330-1 (4th Cir. 1994). The alleged conduct must have an element of malice, recklessness or some similarly culpable state of mind in order to justify an award of punitive damages. *Strum,* 15 F.3d at 330-1. The policy behind the "independent tort" exception is to keep open-ended tort damages from distorting contractual relations in light of the fundamental difference between tort and contract claims. *Broussard,* 155 F.3d at 346.

Like *Broussard,* the parties' dispute in this case is contractually based. Except for conclusory language, Plaintiff fails to allege any independent factual reason for a tort-based claim. In its complaint, Plaintiff explicitly alleges the contractual basis for the tort claim by asserting, "Alexander's actions were malicious and not justified based on his ongoing agreement with [Plaintiff] that Alexander would not solicit the employees of [Plaintiff]." (Compl. ¶ 37). Plaintiff alleged that Alexander "intentionally induced" two of Plaintiff's employees to terminate their at-will employment relationships with Plaintiff by recruiting and hiring both to work for Alexander's current employer. Plaintiff alleges that Alexander's "actions" [in hiring two at-will employees who are not subject to non-competes] were "malicious" because he "intentionally targeted two key managers" to hire away from Plaintiff for the purpose of injuring Plaintiff's business operations after it "completed its severance payments (which it had a pre-existing duty to pay) to Alexander in good faith. There is nothing more than added conclusory language to an otherwise asserted breach of contract claim. Plaintiff alleges in conclusory manner that Alexander "intentionally induced

13

two managers" to terminate their "at will" contracts with Plaintiff, but provides no factual allegations or basis for how Plaintiff alleged "induced" the two employees. (Compl. ¶ 36), but provides no dates to determine whether the "two employees" were then currently employed by Plaintiff or formerly employed when any alleged discuss took place with the latter being in compliance with the alleged agreement.

Just like the Fourth Circuit found in *Broussard,* at most, Plaintiff may be able to prove that Alexander did not carry out his contractual obligations, if the alleged agreement valid and enforceable and those obligations existed. However, as the Fourth Circuit ruled in *Broussard,* the mere failure to carry out an obligation in contract does not support an action for tortious interference with contract. As such, Plaintiff's tortious interference with contract claim should be dismissed with prejudice.

B. Plaintiff's claim for tortious interference with contract should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to make any plausible allegations of damages.

There is no tortious interference with contract claim unless Plaintiff can prove that the conduct in question "resulted in actual damage to plaintiff." *Beverage Sys. of the Carolinas, LLC,* 368 N.C. at 700. A valid cause of action for tortious interference with contract will be only for the actual (pecuniary) value of the contract interfered with, and will not extend to such speculative matters as loss of patronage and good will. *Carolina Overall Corp. v. E. Carolina Linen Supply, Inc.* 8 N.C. App. 528, 531-32, 174 S.E.2d 659, 661 (1970).

14

Other than the use of conclusory language, Plaintiff's complaint is devoid of any factual allegation that plausibly shows that Plaintiff incurred any actual damages as a result of having two "at will" employees leave their employment with Plaintiff. Plaintiff only alleges that, "Alexander's conduct has caused damage to Garland based on the disruption of the business caused by the loss of two key managers." (Compl. ¶ 26) However, "disruption of the business" is a conclusory phrase. There are no specific facts alleged that show Plaintiff was harmed in any way by the acts that it alleged related to Alexander. Plaintiff's tortious interference with contract claim should be dismissed with prejudice for failure to make plausible allegation that any specific damages were incurred as a result of Alexander's conduct.

IV. **Plaintiff's claim for punitive damages should be dismissed for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6) and N.C. Gen. Stat. §§ 1D-1, *et seq*.**

    A. Punitive damages may not be awarded based on breach of contract in the absence of the commission of an identifiable tort.

A claim for punitive damages is not a stand-alone cause of action. *Funderburk v. JP Morgan Chase Bank, N.A.,* 241 N.C. App. 415, 425, 775 S.E.2d 1, 8 (2015). Punitive damages shall not be awarded against a person solely for breach of contract. N.C. Gen. Stat. § 1D-15(d). Punitive damages are not allowed even when the breach is willful, malicious, or oppressive. *Cash v. State Farm Mut. Auto. Ins. Co.,* 137 N.C. App. 192, 200, 528 S.E.2d 372, 377 (2000).

Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which the compensatory damages were awarded: (1) fraud, (2) malice, or (3) willful or wanton conduct. *Id.;* N.C. Gen. Stat. § 1D-10. Because Plaintiff's tortious interference with contract claim fails for reasons explained in the preceding section, Plaintiff's punitive damages "claim" must fail as well because breach of contract alone cannot support a claim for punitive damages.

> B. Plaintiff failed to allege facts sufficient for a plausible finding that any tortious interference with contract was accompanied by the requisite element of aggravation.

Even where sufficient facts are alleged to make out an identifiable tort, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed. *Cash v. State Farm Mut. Auto Ins. Co.,* 137 N.C. App. 192, 200, 528 S.E.2d 372, 377 (2000); *Smith v. Nationwide Mut. Fire Ins. Co.,* 96 N.C.App. 215, 216, 385 S.E.2d 152, 153 (1989). That is, a claimant must prove by clear and convincing evidence that the wrongdoing was accompanied with the additional aggravated element of either: (1) fraud, (2) malice, or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). Further, the additional aggravated element accompanying the tort must be proven by the higher burden of proof of clear and convincing evidence. N.C. Gen. Stat. § 1D-15(b).

The term "malice" means a "sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that

16

resulted in harm to the claimant." N.C. Gen. Stat. § 1D-5(5). The term "willful or wanton conduct" means "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. N.C. Gen. Stat. § 1D-5(7). It means more than "gross negligence." *Id.*

In its complaint, Plaintiff only uses conclusory language to assert that it incurred damages for "malicious conduct and willful and wanton conduct" in violation of N.C. Gen. Stat. § 1D-1, *et seq.* (Compl. ¶ 41). A review of the other allegations contained in the complaint reveals no non-conclusory factual allegations to suggest that Alexander's actions were nothing other than those arising from a breach of contact, if such claim were valid and enforceable, which is denied. For example, Plaintiff alleged that Alexander's "actions" were malicious in that he "intentionally targeted two key managers of Garland to hire away from Garland for the purpose of injuring Garland's business operations after Garland completed its severance payments to Alexander in good faith." (Compl. ¶ 37). However, Plaintiff had a pre-existing duty to pay Alexander the referenced "severance payments" under the terms of the purported employment agreement. (Compl. Ex. A, pp.1-2).

In fact, in the alleged employment agreement, Plaintiff's pre-existing duty was to remit to Alexander monthly base salary for two months of the notice period for dismissal without cause (Compl. Ex. A, p. 3) *plus* severance in the amount equivalent to six additional months. (*Id.*). Accordingly, the severance amount that Alexander received from Plaintiff was actually shorted by one month of base salary. Note that

17

the "annual bonus" was already due and payable in two installments before June 30 of the following year under the terms of the employment agreement. (Compl. Ex. A, p. 1) Accordingly, Plaintiff alleged no facts showing any plausible claim that Alexander acted with "malice" or a conscious and intentional disregard and indifference to" Plaintiff's rights. As such, the Court should dismiss with prejudice Plaintiff's claim for punitive damages.

# CONCLUSION

For the reasons set forth herein, Alexander respectfully requests that the Court grant his motion to dismiss with prejudice Plaintiff's complaint and all purported claims contained therein for failure to state a plausible claim for relief, pursuant to Fed. R. Civ. P. 12(b)(6).

This the 27th day of February, 2023.

BAILEY & DIXON, LLP

By: /s/ *J. Heydt Philbeck*
J. Heydt Philbeck
434 Fayetteville Street, Suite 2500
Raleigh, North Carolina 27601
Telephone: (919) 828-0731
Facsimile: (919) 832-6592
Email: hphilbeck@bdixon.com
State Bar # 19379

*Attorneys for Defendant
  Frederick Alexander*

CERTIFICATE OF WORD COUNT:

Pursuant to Local Civil Rule 7.2(f)(3), I hereby certify that the foregoing document complies with the type-volume limitations of Local Civil Rule 7.2(f) and contains 4,530 (8400 word limit) words, excluding those portions exempted by the rule.

This the 27th day of February, 2023.

/s/ *J. Heydt Philbeck*
J. Heydt Philbeck
Bailey & Dixon, LLP

CERTIFICATE OF SERVICE:

THIS IS TO CERTIFY that pursuant to Fed. R. Civ. P. 5, the undersigned has this date served the foregoing DEFENDANT'S MEMORANDUM SUPPORTING MOTION TO DISMISS upon all parties to this action by electronically filing the same with the Clerk of Court using the CM/ECF system, which should send notification of such filing to the counsel for the parties listed below, who are believed to be CM/ECF participants.

This the 27th day of February, 2023.

/s/ *J. Heydt Philbeck*
J. Heydt Philbeck
Bailey & Dixon, LLP

SERVED ON:

Luther D. Starling, Jr., Esq.
Andrew J. Dickerhoff, Esq.
Daughtry, Woodard, Lawrence, & Starling
Post Office Drawer 1960
Smithfield, NC 27577
Telephone: (919) 934-5012
Emails: lewstarling@dwlslaw.com
andrewdickerhoff@dwlslaw.com