IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:23-CV-11-FL

| | | |
|---|---|---|
| GARLAND APPAREL GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| FREDERICK ALEXANDER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 8). The issues raised have been briefed fully and in this posture are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this contract and tort action against defendant, its former employee, on December 15, 2022, in the Superior Court of Sampson County, North Carolina, asserting claims for breach of contract and tortious interference with contract under North Carolina law. Plaintiff seeks compensatory and punitive damages, forfeiture of compensation paid, and an award of attorneys' fees and costs.

Defendant removed to this court January 21, 2023, on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b). Defendant filed the instant motion February 27, 2023. Plaintiff responded, then corrected its response pursuant to a notice of deficiency from the clerk. After obtaining an extension of time, defendant replied.

# STATEMENT OF THE FACTS

The relevant facts may be summarized as follows. Plaintiff, a North Carolina corporation, "operates a cut-and-sew apparel manufacturing facility." (Compl. ¶¶ 3, 8). Defendant, a Georgia citizen, served as plaintiff's president, and the parties entered into an employment agreement effective July 1, 2021, a copy of which plaintiff attaches to its complaint. The employment agreement provides in relevant part that defendant shall not, during his employment or for two years thereafter, "solicit, hire, or otherwise engage any person employed by [plaintiff] to perform services for [defendant] or any other person or entity." (DE 1-2 at 11). The employment agreement also provides that "any action brought to enforce any right or obligation under this agreement shall be subject to the exclusive jurisdiction of the courts of the state of Illinois." (Id. at 12).

Defendant's employment terminated December 15, 2021, (see compl. ¶ 15), and the parties entered into a second agreement ("the separation agreement"), which is also attached to the complaint. (Id. ¶ 16; see DE 1-2 at 15-22). The separation agreement "supersed[ed] the terms of the employment agreement, except as expressly stated." (DE 1-2 at 15). As part of the separation agreement, defendant "restat[ed] his commitment to complying with all the post-employment restrictions . . . in his employment agreement . . . . and agree[d] that [he would] be obligated to fully honor those post-employment covenants of the law." (Id. at 21).

"[I]n or around mid-August of 2022, [defendant] agreed to hire two managerial employees of [plaintiff] for the business venture [defendant] joined after his employment with [plaintiff] ended." (Compl. ¶ 22). "These two managers resigned on or about August 15, 2022, in order to work for [defendant's] current employer." (Id. ¶ 23). "[T]he loss of [these] two key managers" allegedly disrupted plaintiff's business. (Id. ¶ 26).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[1] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

   1.  Breach of Contract

Defendant argues that the courts of the State of Illinois have exclusive jurisdiction over plaintiff's breach of contract claim. The court agrees.

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas, 571 U.S. 49, 63 (2013). Thus, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." Id.

"[T]he appropriate way to enforce a forum-selection clause pointing to a state . . . forum is through the doctrine of forum non conveniens." Id. at 60. This doctrine ordinarily "allows a court

---

[1]  Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

to dismiss a case when the original venue is highly inconvenient and an adequate alternative venue exists." BAE Systems Technology Solution & Services, Inc. v. Republic of Korea's Defense Acquisition Program Administration, 884 F.3d 463, 470-71 (4th Cir. 2018). "In the typical case, the defendant invoking forum non conveniens bears a heavy burden in opposing the plaintiff's chosen forum," but "the framework is modified . . . in the context of a valid forum selection clause." Id. at 471. "Mandatory forum selection clauses enjoy a presumption of enforceability," id., and are controlling unless plaintiff meets the "burden of proving why [they] should not be enforced." Id. at 472; see also U.S. Smoke & Fire Curtain, LLC v. Bradley Lomas Electrolok, 612 Fed. Appx. 671, 672-73 (4th Cir. 2015) ("Generally, . . . forum-selection clauses are enforceable beyond the expiration of the contract if they are otherwise applicable to the disputed issue and the parties have not agreed otherwise."). Mandatory forum selection clauses include "specific language of exclusion . . . , provid[ing] that a particular place constitutes the 'sole' or 'only' or 'exclusive' forum." BAE Systems, 884 F.3d at 472.

Pursuant to the employment agreement, the parties agreed that "any action brought to enforce any right or obligation under [that] agreement shall be subject to the exclusive jurisdiction of the courts of the State of Illinois." (DE 1-2 at 5) (emphasis added). The forum selection clause is mandatory where it contains language of exclusion, thus the court should enforce it unless plaintiff shows that enforcing the clause would be unreasonable in this instance. Plaintiff argues that the forum selection clause in the employment agreement should not be enforced where "the operative agreement here, the settlement agreement, does not contain a forum selection clause." (DE 11 at 6). Plaintiff neither elaborates on this contention nor cites any precedent in support; nonetheless, the court considers fully this argument as a reference to the separation agreement attached to the complaint.

The United States Court of Appeals for the Fourth Circuit analyzed a forum selection clause in the context of a superseding contract in Albemarle Corp. v. AtraZeneca UK Ltd., 628 F.3d 643 (4th Cir. 2010). The original contract in that case "provided that the contract was 'subject to' the jurisdiction of the English High Court," but plaintiff argued that a later contract, which included an integration clause and a forum selection clause vesting exclusive jurisdiction in courts in and around Orangeburg, South Carolina, superseded the original agreement. Id. at 648. The Fourth Circuit found plaintiff's argument to be "inconsistent with [its] litigating posture" where plaintiff sought to preserve a right of first refusal memorialized in the original contract without "including the conditions attached to that right," specifically the requirement that "the right [was] to be . . . litigated in an English court." Id. In addition, the court found that obligations existing under the original contract "were not eliminated" by a clause in the later contract stating that the original contract had "no further force or effect" where the word "further" simply was "forward-looking and [did] not purport to undo and nullify all prior" dealings. Id. (emphasis in original opinion). Finally, the court treated the original contract as valid and enforceable where the later contract did "not purport to release any or all claims arising out of the [original] contract." (Id.).

As in Albemarle Corp., plaintiff in the instant case seeks to enforce defendant's obligation under the employment agreement not to solicit plaintiff's employees without abiding by the forum selection clause attached to that obligation. In addition, the plain language of both agreements supports the continued application of the original forum selection clause. The forum selection clause applies to actions "brought to enforce any right or obligation under" the employment agreement, of which the obligation not to solicit employees certainly is one. (DE 1-2 at 12). The superseding effect of the separation agreement does not apply when "expressly stated," (id. at 15),

5

and one such statement reincorporates the parties' original "post-employment covenants of the law." (Id. at 21).

Finally, the Fourth Circuit's analysis of release of claims is instructive where defendant released plaintiff from "all claims . . . relating to [his] employment or separation," (id. at 18); (see also id. at 19) ("[defendant] represents that he has not filed any charges, suits, claims or complaints against [plaintiff] . . . , and . . . agrees that he will not do so at any time in the future with respect to any claim which arose prior to the date of this agreement"), but plaintiff did not so release defendant. According to the Fourth Circuit, the absence of a release of claims in a later contract tends to show that the rights and obligations of a prior contract remain in force. See Albemarle Corp., 628 F.3d at 648 (finding that the rights and obligations in an original agreement remained enforceable where a later contract did "not purport to release any or all claims arising out of the [original] contract").

Accordingly, plaintiff's breach of contract claim is dismissed under the doctrine of forum non conveniens.

2. Tortious Interference with Contract

To state a claim for tortious interference with contract under North Carolina law, plaintiff must allege

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

Krawiec v. Manly, 370 N.C. 602, 606–07 (2018) (quoting United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661 (1988)). A motion to dismiss "should be granted when the complaint reveals that the interference was justified or privileged," such as when defendant pursues "a legitimate business purpose." Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 220-21 (1988). One such legitimate

purpose is the "hiring . . . of the plaintiff's former employees by the defendant for the purpose of . . . competing with the plaintiff." Id. at 222; see also Coordinated Health Services, Inc. v. Primary Health Choice, Inc., 176 N.C. App. 407, 407 (2006) (finding the fourth element not met where defendant hired away at-will employees who had not signed a non-competition agreement and the complaint did "not forecast any evidence capable of establishing that defendants' conduct . . . was done other than as a reasonable and bona fide attempt to develop defendants' business interests."). The privilege to interfere with a competitor's contracts, however, "is conditional or qualified," and "is lost if exercised for a wrong purpose," such as when "the act is done other than as a reasonable and bona fide attempt to protect the interests of the defendant." Smith v. Ford Motor Co., 289 N.C. 71, 91 (1976).

In Hooks, the North Carolina Supreme Court considered whether the trial court erred in dismissing a complaint that alleged defendant knowingly induced plaintiff's employees to work for a competitor, violating those employees' covenants not to compete. Hooks, 322 N.C. at 219–20. The court held that hiring and placing of the plaintiff's former employees by the defendant for the purpose of developing the territory assigned to him by a company competing with the plaintiff amounted to justifiable interference, remarking that "[t]o restrict an employer's right to entice employees, bound only by terminable at will contracts, from their positions with a competitor . . . savors strongly of oppression." Id. at 222-23. In Kuykendall, however, that court found that a question of fact arose as to whether a competitor was legally justified in interfering with a contract of employment where the defendant company agreed to pay all legal expenses incurred as a result of defendant employee breaching covenants not to compete and used plaintiff's confidential and proprietary information to solicit customers in contravention of defendant employee's contract with the plaintiff. See United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 662-63 (1988); see

7

Case 7:23-cv-00011-FL   Document 15   Filed 09/11/23   Page 7 of 9

also Roane-Barker v. Southeastern Hosp. Supply Corp., 99 N.C. App. 30, 39 (1990) (finding that a complaint plausibly alleged tortious interference with a contract where "the salesmen hired by defendant did solicit plaintiff's customers and further induced the salesmen to interfere with plaintiff's existing accounts").

Plaintiff alleges that defendant "agreed to hire two managerial employees of [plaintiff] for the business venture [defendant] joined after his employment with [plaintiff] ended." (Compl. ¶ 22). Plaintiff asserts in addition that defendant "intentionally induced two managers of [plaintiff] to terminate their contractual 'at-will' employment relationships with plaintiff," (compl. ¶ 36), and that these actions "were malicious in that [defendant] intentionally targeted two key managers of [plaintiff] to hire away from [plaintiff] for the purpose of injuring [plainitff's] business." (Id. ¶ 37). The instant complaint falls short of the basic relevant facts in Hooks, in which allegations that defendant induced plaintiff's former employees both to terminate their employment and to violate non-compete clauses in the employees' contracts were found not to support a plausible claim of tortious interference. Hooks, 322 N.C at 219, 222-23. Here, plaintiff has alleged only that its managers terminated their employment to work with defendant. Accordingly, plaintiff's tortious interference claim is dismissed.

Plaintiff argues that its allegation that defendant "intentionally targeted two key managers . . . for the purpose of injuring [plaintiff's] business operations," (compl. ¶ 38), gives rise to a plausible inference that defendant acted without justification. However, the court is not bound to accept as true "bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, 591 F.3d at 255. Plaintiff does not allege facts that could give rise to a plausible inference that defendant's sole motivation was to cause injury to plaintiff, on the contrary, the complaint's description of these managers as "key"

(compl. ¶¶ 26, 38) employees who provided essential services demands an inference that the managers' effectiveness made them desirable in the labor market. Plaintiff has not cited, and the court has not found, any instance in which the bare assertion of improper motive was sufficient to allege the fourth element of tortious interference with contract.

    3.    Punitive Damages

Plaintiff asserts in the complaint a "claim" for punitive damages. Without a viable claim for compensatory damages against defendant, however, plaintiff's claim for punitive damages fails. See N.C. Gen. Stat. § 1D-15(a) ("Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damage."); Funderburk v. JPMorgan Chase Bank, N.A., 241 N.C. App. 415, 425 (2015) ("[A] claim for punitive damages is not a stand-alone claim."). Accordingly, this claim is dismissed.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED and this action is DISMISSED for failure to state a claim upon which relief may be granted. The clerk is DIRECTED to close this case.

SO ORDERED, this the 11th day of September, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge